Christopher B. Dalbey (SBN 285562)
    cdalbey@weitzlux.com
**WEITZ & LUXENBERG, P.C.**
1880 Century Park East, Suite 700
Los Angeles, CA 90067
Tel.: 310-247-0921
Fax: 310-786-9927

Robin L. Greenwald
    (appearing *pro hac vice*)
    rgreenwald@weitzlux.com
Maja Lukic
    (appearing *pro hac vice*)
    mlukic@weitzlux.com
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
Tel.: 212-558-5500
Fax: 212-344-5461

*Attorneys for Plaintiff Yolanda Mendoza*

Hunter W. Lundy
    (appearing *pro hac vice*)
    hlundy@lundylawllp.com
Matthew E. Lundy
    (appearing *pro hac vice*)
    mlundy@lundylawllp.com
Kristie M. Hightower
    (appearing *pro hac vice*)
    khightower@lundylawllp.com
**LUNDY, LUNDY, SOILEAU & SOUTH, LLP**
501 Broad Street
Post Office Box 3010
Lake Charles, LA 70602
Tel.: 337-439-0707
Fax: 337-439-1029

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Yolanda MENDOZA,<br><br>        Plaintiff,<br><br>      v.<br><br>MONSANTO COMPANY,<br><br>        Defendant. | Case No. 1:16-cv-00406-DAD-SMS<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MONSANTO COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

1

## **<u>TABLE OF CONTENTS</u>**

2

I. INTRODUCTION ............................................................................................... 1

3

II. STATEMENT OF FACTS.................................................................................. 2

4

III. ARGUMENT ....................................................................................................... 3

5

  A. **The Supreme Court in *Bates v. Dow Agrosciences LLC* Defined the Scope of FIFRA Preemption of State Law Causes of Action** .........................................3

6

7

    1. The Supreme Court in Bates v. Dow Agrosciences LLC Defined the Scope of FIFRA Preemption of State Law Causes of Action ..................... 4

    2. Presumptions Against Preemption Guide the Court's Analysis ................ 5

8

    3. FIFRA's Preemption Provision is Narrow and Does Not Overcome the Presumption Disfavoring Preemption Here ................................................ 6

9

    4. Monsanto Misreads FIFRA Section 136(a)(f)(2)...................................... 10

10

    5. The EPA's Glyphosate Classifications are Irrelevant................................ 12

11

    6. Plaintiff's Other State-Law Claims for Design Defect, Negligence, and Breach of Express and Implied Warranties Are Not Preempted............... 13

12

  B. **The Restatement (Second) of Torts §402A Does Not Bar Plaintiff's Design Defect Claims** ...................................................................................14

13

    1. Comment *k* is Inapplicable by its Own Terms ........................................ 15

14

    2. Pesticides Do Not Qualify for Comment *k*'s Blanket Exemption ............. 15

15

    3. Comment *k* Does Not Apply at the Pleading Stage .................................. 18

    4. Comment *j* Does Not Preclude Plaintiff's Claims ................................... 19

16

IV. CONCLUSION .................................................................................................. 21

17

18

19

20

21

22

23

24

**TABLE OF AUTHORITIES**

**CASES**

*Arias v. Dyncorp*, 517 F. Supp. 2d 221, 229 (D.D.C. 2007)............................................. 12

*Artiglio v. Super. Ct.*, 27 Cal. Rptr. 2d 589, 592 (Cal. Ct. App. 1994).......................... 16

*Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 757–58 (9th Cir. 2015)........................ 10, 12

*Authement v. Ingram Barge Co.*, 977 F. Supp. 2d 606 (E.D. La. 2013) ......................... 18

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005) ............................................. *passim*

*Borel v. Fibreboard Paper Prods. Corp.*, 493 F. 2d 1076 (5th Cir. 1973) .................................... 18

*Brazil v. Sara Lee Corp.*, No. D045925, 2006 WL 181597, at *3 (Cal. Ct. App. Jan. 26, 2006) . 13

*Brown v. Super. Ct.*, 751 P.2d 470, 475-76 (Cal. 1988) ......................................... 15, 16

*Carlin v. Super. Ct.*, 13 Cal. 4th 1104, 1112 (1996) ................................................. 9

*Daniels v. Combustion Eng'g, Inc.*, 583 S.W.2d 768 (Tenn. Ct. App. 1978)................................ 18

*Fed. Deposit Ins. Corp. v. Countryside Secs. Corp. (In re Countrywide Fin. Corp. Mortgage-
Backed Secs. Litig.)*, 966 F. Supp. 2d 1018, 1025 (C.D. Cal. 2013).................................... 6

*Ferebee v. Chevron Chem. Co.*, 736 F.2d 1529, 1539–40 (D.C. Cir. 1984)................................ 12

*Giglio v. Monsanto Co., et al.*, No. 15-cv-02279 BTM(NLS), 2016 WL 1722895 (S.D. Cal. Apr.
29, 2016) ........................................................................................ *passim*

*Gucciardi v. Bonide Products, Inc.*, 28 F.Supp.3d 383, 392 (E.D. Pa. 2014) ............................. 11

*Hall v. Ashland Oil Co.*, 625 F. Supp. 1515 (1986)................................................. 18

*Hardeman v. Monsanto Co.*, No. 3:16-cv-00525-VC (N.D. Cal. Apr. 8, 2016)................... *passim*

*Hufft v. Horowitz*, 5 Cal. Rptr. 2d 377, 383 (Cal. Ct. App. 1992), *modified* Mar. 17, 1992.......... 16

*Mills v. Giant of Maryland, LLC*, 441 F. Supp. 2d 104, 108 (D.D.C. 2006), *aff'd*, 508 F.3d 11
(D.C. Cir. 2007) .................................................................................. 6

*Payne v. Soft Sheen Prods., Inc.*, 486 A.2d 712 (D.C. 1985) .................................... 18, 19

*Plenger v. Alza Corp.,* 13 Cal. Rptr. 2d 811, 818 (Cal. Ct. App. 1992) ........................... 16

*Purvis v. PPG Indus., Inc.*, 502 So. 2d 714, 719 (Ala. 1987)...................................... 18

*Red v. Kroger Co.*, 2010 WL 4262037 (C.D. Cal. Sept. 2, 2010) ................................. 11

*Ruiz-Guzman v. Amvac Chem. Corp.*, 243 F.3d 549 (9th Cir. 2000) (unpublished) .................... 18

*Ruiz-Guzman v. Amvac Chem. Corp.*, 7 P.3d 795 (Wash. 2000) .................................................... 18

*See Golden Wolf Partners v. BASF Corp.*, No. CV F 08-0618 LJO SMS, 2010 WL 5173197, at *8 (E.D. Cal. Dec. 13, 2010) ........................................................................................................ 9

*Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1228 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 283 (2014) ............................................................................................................................... 7, 11

*Sun Valley Packing v. Consep, Inc.*, 114 Cal. Rptr. 2d 237 (Cal. Ct. App. 2001) ........................ 14

*Transue v. Aesthetech Corp.*, 341 F.3d 911, 916 (9th Cir. 2003) ............................................ 17

*Turner v. Chevron U.S.A. Inc.*, No. B173622, 2006 WL 1314013 (Cal. Ct. App. May 15, 2006) 13

*Vermeulen v. Super. Ct.*, 251 Cal. Rptr. 805, 813 (Cal. Ct. App. 1988) ...................................... 20

*Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883, 886–87 (8th Cir. 2005) ............................................ 13

**Statues**

21 U.S.C. § 343-1 ........................................................................................................................... 11

40 C.F.R § 156.70 ............................................................................................................................. 8

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .................................................................................. 8, 16

Federal Rule of Civil Procedure 12(d) .......................................................................................... 8

Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7. U.S.C. § 136 *et seq.* ...... *passim*

Restatement (Second) of Torts § 402A ................................................................................... *passim*

## I.      INTRODUCTION

In two recent clear decisions, both the Northern District of California in its April 8, 2016, order in the case of *Hardeman v. Monsanto Co*., No. 3:16-cv-00525-VC (N.D. Cal. Apr. 8, 2016), ECF No. 34,[1] and the Southern District of California in an April 29, 2016, order in *Giglio v. Monsanto Co., et al*., No. 15-cv-02279 BTM(NLS), 2016 WL 1722895 (S.D. Cal. Apr. 29, 2016), rejected identical arguments that Monsanto raises in its Motion to Dismiss Plaintiff's Amended Complaint ("Motion to Dismiss") in this case and adopted the arguments that Plaintiff makes in the instant opposition.  Plaintiff submits that this Court may similarly dispense with Monsanto's motion.

Plaintiff alleges that Monsanto's herbicide Roundup® caused her blood cancer.  Mrs. Mendoza, like countless others who use Roundup®, was not warned by Monsanto about the dangers of Roundup®—specifically, that it is a carcinogen.  Instead, since Monsanto first introduced Roundup® in the market in the 1970s, it has touted it as safe—on its label, through its aggressive marketing campaign, and in its advertising—to humans, wildlife, and the environment.  Monsanto's efforts to avoid legal responsibility for its wrongdoing fail.

As in *Hardeman*, Monsanto has not established that the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7. U.S.C. § 136 *et seq*., preempts Plaintiff's claims.  In *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), the Supreme Court defined the scope of FIFRA preemption narrowly, *only* to bar state law actions if they would impose requirements that are "in addition to" or "different from" those required under FIFRA.  Monsanto has not met its burden of demonstrating that Plaintiff's claims impose such requirements.  Indeed, nothing in Plaintiff's failure-to-warn claims involves requirements inconsistent with those which FIFRA imposes.  *See*

---

[1] The *Hardeman* order is attached to the concurrently-filed Plaintiff's Request for Judicial Notice.

*Hardeman*, at 1–4.  To the contrary, Plaintiff's claims that Monsanto had a duty to warn of Roundup®'s carcinogenic and dangerous effects are parallel to FIFRA's misbranding requirement that products contain warnings sufficient to protect the health of those exposed. Monsanto did not identify a single requirement that Plaintiff seeks to impose that is greater than or inconsistent with what FIFRA already requires with respect to branding and labeling.  Instead, Monsanto leaves the Court and Plaintiff to speculate what specific requirements it believes are preempted.

Further, Restatement § 402A comments *j* and *k*, upon which Monsanto relies for dismissal of Plaintiff's Amended Complaint, are inapplicable. As the *Hardeman* court concluded, comment *k* protection, in California, is limited to pharmaceuticals and other medical products but not pesticides.  The only court to apply comment *k* to a pesticide also held that the application of comment *k* requires a risk-benefit analysis that is fundamentally a jury function.  Both comments *j* and *k* are predicated on the extent of Monsanto's knowledge of glyphosate/Roundup®'s carcinogenicity, and this factual issue cannot be resolved before the parties have had an opportunity for discovery.  For all of these reasons, Monsanto's motion fails.

## II.   STATEMENT OF FACTS

Roundup® was introduced in the mid-1970s.  (Am. Compl. ¶ 20.)  In 1985, the EPA classified glyphosate as *possibly carcinogenic to humans* (Group C).  (*Id*. ¶ 28.)  Following Monsanto's pressure to change the classification, in 1991 the EPA classified it as Group E, *evidence of non-carcinogenicity in humans*.  (*Id.*)

Twice, the EPA found the laboratories hired by Monsanto to test the toxicity of Roundup® products for registration purposes had committed fraud.  Executives from both

laboratories were criminally convicted for fraudulent laboratory practices in the testing of pesticides and herbicides.  (*Id.* ¶¶ 29–33.)

In 1996, the New York Attorney General filed a lawsuit against Monsanto, challenging its false and misleading advertising of Roundup® products as "practically non-toxic" to mammals, birds, and fish.  (*Id.* ¶ 38.)   Monsanto agreed to stop "publishing or broadcasting any advertisements [in New York] that represent, directly or by implication" that "its glyphosate-containing pesticide products or any component thereof are safe, non-toxic, harmless or free from risk."  (*Id.* ¶ 39.)

On July 29, 2015, the International Agency for Research on Cancer ("IARC") issued an evaluation of glyphosate.  (*Id.* ¶ 4.)  Studies used in an IARC review must be publically available and reviewers must be free of conflict of interest.  (*Id.* ¶ 45.)  The IARC Working Group classified glyphosate as a Group 2A herbicide—*probably carcinogenic to humans*.  (*Id.* ¶ 4.)

Plaintiff Yolanda Mendoza ("Mendoza") lives in Atwater, California, and has lived there since in or around 2004.  (*Id.* ¶ 71.)  Mendoza's home sits on one acre of land.  From the time she purchased her home in 2004 until in or around 2012, she personally sprayed Roundup® on her property.  She sprayed using a backpack approximately once every two weeks, from in or around March through November of every year for eight years.  She recalls breathing vapors while applying Roundup®.  (*Id.*)   In October 2013, Mendoza was diagnosed with non-Hodgkin lymphoma.  (*Id.* ¶ 73.)

## III.   ARGUMENT

### A.   The Supreme Court in *Bates v. Dow Agrosciences LLC* Defined the Scope of FIFRA Preemption of State Law Causes of Action

FIFRA bars state law actions *only* if they seek to impose requirements that are "in addition to" or "different from" those FIFRA requires.  7 U.S.C. § 136v(b).  Plaintiff's failure-to-warn

claims are consistent with and parallel to FIFRA's misbranding provisions. Because Monsanto fails to carry its considerable burden of demonstrating application of express preemption here, its argument fails. *See Giglio*, 2016 WL 1722895, at \*2; *Hardeman*, at 1–4; *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1186 (S.D. Cal. 2015).

1. The Supreme Court in Bates v. Dow Agrosciences LLC Defined the Scope of FIFRA Preemption of State Law Causes of Action

In *Bates*, Texas peanut farmers alleged that a pesticide manufactured and distributed by defendant Dow Agrosciences LLC ("Dow") severely damaged their crops. *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005). Dow registered the pesticide with the EPA under FIFRA and labeled the product for use "in all areas where peanuts are grown." *Id.* at 435. The pesticide at issue damaged the crops where the soil had a pH level of 7.2 or higher. *Id.* Plaintiff alleged that Dow should have known the pesticide would stunt peanut growth in soils with pH levels of 7.0 or greater, *id.*, and farmers filed suit on several grounds, including strict liability, negligence, fraud, breach of warranty, and violation of the Texas Deceptive Trade Practices-Consumer Protection Act. *Id.* at 435–36.

The Fifth Circuit Court of Appeals affirmed the district court's ruling that FIFRA preempted the farmers' claims, *id.* at 436, holding that FIFRA's preemption provision, 7 U.S.C. § 136v(b), preempted any state law claim in which "a judgment against Dow would induce it to alter its product label." *Id.* (quoting *Bates v. Dow*, 332 F.3d 323, 331 (5th Cir. 2003)). The Supreme Court reversed and constructed a two-part test for determining preemption under FIFRA:

> For a particular state rule to be pre-empted, it must satisfy two conditions. First, it must be a requirement "*for labeling or packaging*"; rules governing the design of a product, for example, are not pre-empted. Second, it must impose a labeling or packaging requirement that is "*in addition to or different from* those required

under this subchapter."   A state regulation requiring the word "poison" to appear in red letters, for example, would not be pre-empted if an EPA regulation imposed the same requirement.

*Id.* at 444 (emphasis in original). Applying this test, the *Bates* Court held that Plaintiff's claims of strict product liability, negligent testing, and breach of express warranty were not preempted because "[n]one of these common law rules requires that manufacturers label or package their products in any particular way." *Id.*

2.   Presumptions Against Preemption Guide the Court's Analysis

Two presumptions regarding preemption guide the courts.  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).  First, historic police powers of the states are assumed not to be superseded unless Congress clearly manifests its intention to do so because "the States are independent sovereigns in our federal system." *Id.*; *see Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009).[2] As such, there is a long standing presumption "that Congress does not cavalierly pre-empt state-law causes of action." *Bates*, 544 U.S. at 449; *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 437 (9th Cir. 2015).  This presumption is heightened "where federal law is said to bar state action in fields of traditional state regulation." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995); *Swearingen v. Yucatan Foods, L.P.*, 24 F. Supp. 3d 889, 896 (N.D. Cal. 2014).  Because states have traditionally regulated the fields of health and safety, the heightened presumption against preemption applies to the instant matter.  *Id.*

---

[2] The Ninth Circuit has noted two practical reasons for this presumption.  Congress has the power to make preemption clear in the first instance—in its drafting of legislation. *Chem. Specialties Mfrs. Assn. v. Allenby*, 958 F.2d 941, 945 (9th Cir. 1992).  Also, if a court erroneously finds preemption, the state is unable to do anything about it, while if a court errs in the other direction, Congress can correct the problem.  *Id.*

Second, in analyzing preemption claims, the Court must consider Congressional purpose and intent, the "ultimate touchstone" in every preemption case. Monsanto can prevail only by establishing that FIFRA's preemption of Plaintiff's claims are "the clear and manifest purpose of Congress." *Medtronic*, 518 U.S. at 485; *see also Gordon,* 575 F.3d at 1060; *Indus. Truck Ass'n. Inc. v. Henry*, 125 F. 3d 1305 (9th Cir. 1997).

Courts determine Congressional intent by analyzing the statutory language and the overall statutory scheme. *Gordon,* 575 F.3d at 1060. Consistent with the general presumption against preemption, where the text of a preemption clause is open to more than one plausible reading, courts "have a duty to accept the reading that *disfavors pre-emption." Bates*, 544 U.S. at 449 (emphasis added); *Fed. Deposit Ins. Corp. v. Countryside Secs. Corp. (In re Countrywide Fin. Corp. Mortgage-Backed Secs. Litig.)*, 966 F. Supp. 2d 1018, 1025 (C.D. Cal. 2013). "[E]xpress preemption statutory provisions should be given narrow interpretation." *Gordon*, 575 F.3d at 1060. "The long history of tort litigation against manufacturers of poisonous substances adds force to the basic presumption against pre-emption." *Bates,* 544 U.S. at 449.[3]

> 3. FIFRA's Preemption Provision is Narrow and Does Not Overcome the Presumption Disfavoring Preemption Here

FIFRA only preempts state requirements for labeling or packaging that are "in addition to or different from" those imposed by FIFRA. 7 U.S.C. § 136v(b).[4] *Bates* made clear that

---

[3] In evaluating FIFRA in *Bates*, the Court noted that the statute authorizes a relatively decentralized scheme that preserves a broad role for state regulation. States can ban or restrict the uses of pesticides that the EPA has approved, 7 U.S.C § 136v(a). States can also register, subject to certain restrictions, pesticides for uses beyond those approved by the EPA, *id.* § 136v(c). 544 U.S. at 450–51.

[4] FIFRA's preemption provision is more restrictive than many other federal statutes. *See, e.g., Mills v. Giant of Maryland, LLC*, 441 F. Supp. 2d 104, 108 (D.D.C. 2006), *aff'd*, 508 F.3d 11 (D.C. Cir. 2007) ("The scope of FDCA's preemption clause is much broader than FIFRA's, prohibiting 'any' requirements as opposed to merely requirements 'for labeling or packing'").

common law claims to "enforce a federal requirement '[do] not impose a requirement that is different from or in addition to, requirements under federal law.'" 544 U.S. at 448 (quoting *Medtronic*, 518 U.S. at 513 (O'Connor, J., concurring in part and dissenting in part)); *see also Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1228 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 283 (2014) (state law requirements that parallel federal requirements are not preempted).

The Court must determine whether Plaintiff's claims are substantively equivalent to FIFRA's requirements or, alternatively, incrementally more onerous than FIFRA's requirements, focusing on the "elements of the common-law duty at issue." *Bates,* 544 U.S. at 445.[5]

FIFRA prohibits the sale or distribution of any pesticide that is misbranded. 7 U.S.C. § 136j(a)(1)(E).  An herbicide is misbranded if:

> (F) the labeling accompanying it does not contain directions for use which are necessary for effecting the purpose for which the product is intended and if complied with, together with any requirements imposed under section 136a(d) of this title, are adequate to protect health and the environment; [or]

> (G) the label does not contain a warning or caution statement which may be necessary and if complied with, together with any requirements imposed under section 136a(d) of this title, is adequate to protect health and the environment[.]

*Id.* § 136(q)(1)(F)–(G).  Thus, when an herbicide manufacturer fails to warn, and thus misbrands

---

[5] In support of its argument, Monsanto cites two nonbinding and unpublished class action decisions.  Both deal with the same flea and tick product, and both are distinguishable.  In *Wilgus v. Hartz Mountain Corp.*, 2013 WL 653707 (N.D. Ind. Feb. 19, 2013), the district court concluded that preemption applied because "throughout their Complaint, the plaintiffs reference the inadequacy of the [] labeling," claiming the product was un-merchantable when used *in accordance with* the label instructions and even quoted from the "defective" label as an element of their claims.  *Id*. at *5–6.  In *Smith v. Hartz Mountain Corp.*, 2012 WL 5451726 (N.D. Ohio Nov. 7, 2012), the plaintiffs alleged that the FIFRA mandated warning was insufficient and that warnings *in addition to the FIFRA* requirements were necessary.  *Id*. at *3.  Plaintiff here makes no such claims.  Unlike the plaintiffs in *Wilgus* and *Smith*, Plaintiff asserts a state warning claim that is parallel to the FIFRA requirements—it does not add to or differ from Monsanto's FIFRA requirements.

1    its product, it violates FIFRA.  As set forth below, EPA label approval is not a valid defense.  *Id.*

2    § 136a(f)(2).[6]  FIFRA imposes an *independent requirement* upon herbicide manufacturers not to

3    misbrand their products. Plaintiff makes precisely that allegation.  (*See, e.g.*, Am. Compl. ¶¶ 38–

4    41; 101–121 (Monsanto misbrands Roundup® products as safe, and it fails to provide adequate

5    warnings of Roundup®'s and/or glyphosate's dangers).)

6            Plaintiff's failure-to-warn claims do not impose any obligation in addition to or different

7    from FIFRA's requirements.  *See Hardeman*, at 1–4.  Monsanto's efforts to argue to the contrary

8    woefully fail, making two broad assertions irrelevant to preemption under FIFRA—that the EPA

9    (1) approved the product label; and (2) essentially made a "finding" that glyphosate is not

10   carcinogenic.[7]  These arguments misstate both the facts and law and ignore the parallel federal

11   requirements found in FIFRA's misbranding provisions. *See* 7 U.S.C. § 136J(a)(1)(E); *see also*

12   *Giglio*, 2016 WL 1722895, at *2 ("Defendant overstates the reach of § 136v(b) preemption.").

13          Roundup® does not contain the necessary warnings under 7 U.S.C. § 136j(a)(1)(E).

14   "When data or other information show that an acute hazard may exist to humans or domestic

15   animals, the label must bear precautionary statements describing the particular hazard, the

16   route(s) of exposure and the precautions to be taken to avoid accident, injury or toxic effect or to

---

17          [6] Monsanto asks the Court to disregard FIFRA's misbranding provision by arguing that its
18   misbranded warning is somehow consistent with FIFRA's labeling requirements and thus any
     warning Plaintiff seeks is "in addition to" and preempted.  Monsanto essentially suggests that one
     provision of FIFRA "preempts" the other; it seeks to rely on one provision at the expense of
19   another, redrafting Congress's statute.  All of the requirements found in FIFRA must be given
     equal consideration. *See Bates*, 544 U.S. at 431.

20          [7] Monsanto's argument that the EPA's classification of glyphosate as not carcinogenic is
21   not factually accurate—the EPA has disclaimed its 1991 Group E glyphosate classification,
     stating that "[i]t should be emphasized that designation of an agent in Group E ... *should not be*
22   *interpreted as a definite conclusion that the agent will not be a carcinogen under any*
     *circumstances*." (Am. Compl. ¶ 28 (emphasis added).)  Monsanto is essentially requesting the
     Court improperly take on the jury's role and determine a critical scientific fact in its initial
23   12(b)(6) motion, while not giving the Court the complete set of facts. Moreover, the argument is
     based on extraneous matters and, therefore, the Court should disregard it.  Fed. R. Civ. P. 12(d).

24

---

mitigate the effect."  40 C.F.R § 156.70.  If Monsanto had complied with FIFRA's warning requirements, Plaintiff and others exposed to Roundup® would have been properly protected.[8]

The state-law duty-to-warn claim concerning Roundup®'s carcinogenic and dangerous effects is thus *parallel to* FIFRA's misbranding requirement that products contain warnings sufficient to protect the health of those exposed.  *See Golden Wolf Partners v. BASF Corp.*, No. CV F 08-0618 LJO SMS, 2010 WL 5173197, at *8 (E.D. Cal. Dec. 13, 2010).  Monsanto fails to identify a single claim in the Amended Complaint that seeks a labeling or packaging requirement that is in addition to or different from those FIFRA imposes.[9]

As the *Hardeman* Court explained in its cogent opinion, California law, like FIFRA, requires a manufacturer to warn either of known or knowable risks or "at least those risks that a 'reasonably prudent manufacturer would have known about' (in negligence)."  *Hardeman*, at 1–2 (quoting *Conte v. Wyeth, Inc.*, 85 Cal. Rptr. 3d 299, 310 (Ct. App. 2008)).  The Court further noted that, indeed, "a manufacturer's duty under California law is ***slightly narrower*** than its duty under FIFRA: California law sometimes (in negligence) allows a manufacturer to escape liability where a warning would be unreasonable."  *Id.*  However, FIFRA consistently "seems always to require a warning that is 'necessary' and 'adequate' to protect human health—whether or not

---

[8] *See Carlin v. Super. Ct.*, 13 Cal. 4th 1104, 1112 (1996) (strict liability requires plaintiff to prove that defendant did not adequately warn of a risk that was known or knowable in light of generally recognized and prevailing best scientific and medical knowledge available at time of manufacture and distribution).

[9] *Mirzaie v. Monsanto Co.*, No. 15-cv-04361-DDP, 2016 WL 146421 (C.D. Cal. Jan. 12, 2016), on which Monsanto relies, is distinguishable.  There, the plaintiffs specifically sought, among other things, injunctive relief forcing Monsanto to change its Roundup® label. Accordingly, the *Mirzaie* Court correctly determined that plaintiffs' requested relief constitutes "a requirement for labeling or packaging" and that "an injunction imposed against a manufacturer to change its label would represent a state-mandated labeling requirement and would therefore be preempted."  Plaintiff Mendoza does not seek an injunction dictating the contents of Roundup®'s label.

---

1  such a warning is otherwise reasonable." *Id.*  Accordingly, "it's hard to see how [Mendoza's]

2  failure-to-warn claims could 'be construed more broadly than' FIFRA." *Id.*

3      Monsanto has not met its considerable burden of establishing express preemption. *See*

4  *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 757–58 (9th Cir. 2015) (rejecting

5  preemption of California law under Proposition 65 because defendant failed to identify a contrary

6  federal beverage labeling requirement).

7              4.   Monsanto Misreads FIFRA Section 136(a)(f)(2)

8      Registering an herbicide with an approved label does not excuse violations of FIFRA's

9  branding requirements.  FIFRA's plain language makes clear that warning requirements exist

10  independent of EPA labeling decisions.[10]  *See Hardeman*, at 2–3.  The EPA's authority to enforce

11  FIFRA does not preclude private citizens from suing to also enforce it.  Similarly, the EPA's

12  approval of a product label does not preclude a subsequent jury finding that the same label

13  violates FIFRA.  *See id.*

14      Monsanto's contention that the EPA's approval of the label preempts Plaintiff's failure-to-

15  warn claim ignores FIFRA section 136(a)(f)(2)[11], which states, in relevant part, that "[i]n no

16  event shall registration of an article be construed as a defense for the commission of any offense

17  under this subchapter."  Therefore, an herbicide can be registered but still violate FIFRA by,

18  among other things, failing to provide adequate warnings. 7 U.S.C. § 136j(a)(1)(E), (f)(2); *Bates*,

19  544 U.S. at 438 ("Because it is unlawful under the statute to sell a pesticide that is registered but

---

20      [10] Under California's "Prop. 65" law, warnings different than those EPA requires are often
placed on a variety of products. As to Roundup®, a notice of proposed rule-making under Prop.
21  65 has been issued and which will soon require Monsanto to place a Prop. 65 warning on
Roundup®, stating that Roundup® is "known to the state of California to cause cancer." The
22  listing in California of Roundup® as a known carcinogen may be completed by the time of the
hearing on the instant Motion to Dismiss. *See* http://oehha.ca.gov/prop65/CRNR_notices/
23  admin_listing/intent_to_list/090415LCset27.html.

24      [11] *See* footnote 7, above, regarding EPA's disclaimer of its Group E classification.

---

nevertheless misbranded, manufacturers have a continuing obligation to adhere to FIFRA's labeling requirements.").[12]   Registration of a pesticide is only "prima facie evidence" of compliance with FIFRA; it is not "conclusive proof."   *Hardeman*, at 2–3.   "[T]here's no indication that the EPA's approval of Roundup's label had the force of law."   *Id.* at 3.   If Congress intended to make EPA's labeling decisions determinative, it would have so stated. Instead, Congress specifically provided for common law claims that parallel FIFRA's labeling and misbranding requirements.   *See Bates,* 544 U.S. at 442 ("Nothing in the text of FIFRA would prevent a State from making the violation of a federal labeling or packaging requirement a state offense, thereby imposing its own sanctions on pesticide manufacturers who violate federal law. *The imposition of state sanctions for violating state rules that merely duplicate federal requirements is equally consistent with the text of § 136v.*" (emphasis added)).[13]

---

[12] *See also Gucciardi v. Bonide Products, Inc.*, 28 F.Supp.3d 383, 392 (E.D. Pa. 2014) ("This argument, however, completely misunderstands the scope of the preemption provision . . . .  FIFRA contains no provision preempting all state law claims relating to the efficacy or dangers of the Product.  Moreover, to the extent that Defendants contend that the mere existence of the registration negates Plaintiff's claims that the Product was dangerous, they are mistaken. . . .  Accordingly, while the registration provision creates a presumption that the Product is not dangerous, it does not foreclose proof to the contrary.")

[13] Monsanto argues that "136v(b) preempts any statutory or common law rule that would impose a warning requirement that diverges from EPA's labeling decision."  (Mot. Dismiss at 5.) This interpretation is implausible because it eliminates the meaning of "in addition to" or "different from" from section 136v(b).  Therefore, the Court should adopt the reading disfavoring preemption.  *See Bates*, 544 U.S. at 499; *Stengel*, 704 F.3d at 1231.  In any event, even a showing that Plaintiff's failure-to-warn claims may impose requirements that extend FIFRA requirements—which has not been made—would still not defeat Plaintiff's claims at the pleading stage.  "In undertaking a pre-emption analysis at the pleadings stage of a case, a court should bear in mind the concept of equivalence. To survive pre-emption, the state-law requirement need not be phrased in the identical language as its corresponding FIFRA requirement." *Bates,* 544 U.S. at 454.  See also *Red v. Kroger Co.*, 2010 WL 4262037 (C.D. Cal. Sep. 2, 2010), wherein the court compared FIFRA to the Nutritional Labeling and Education Act ("NLEA"): "In this case, the question is not whether resolution of Plaintiff's state law claims would result in requirements 'equivalent to' or 'fully consistent with' federal law. Rather, the NLEA pre-emption clause in 21 U.S.C. § 343-1(a)(5) prohibits any state from 'directly or indirectly establish[ing] . . . any requirement . . . made in the label or labeling of food that is not identical to the requirement of

---

5. <u>The EPA's Glyphosate Classifications are Irrelevant.</u>

Monsanto's reliance upon the EPA's classification of glyphosate's "safety" is irrelevant and improper, Mot. at 7–9, as the EPA itself has stated that it made no determination of carcinogenicity and/or safety of Roundup®.[14]   *Hardeman* correctly rejected the flawed proposition that the EPA's findings have preemptive effect. *Hardeman*, at 4.

Classifications by the EPA do not constitute clear and manifest statements of Congressional intent.[15]   Thus, notwithstanding the classification given for herbicides, herbicides can nonetheless be challenged as unsafe under state tort law. *See Arias v. Dyncorp*, 517 F. Supp. 2d 221, 229 (D.D.C. 2007); *Ferebee v. Chevron Chem. Co.,* 736 F.2d 1529, 1539–40 (D.C. Cir. 1984) (federal agency's determination that a product was safe for distribution under federal law and did not "pose an unreasonable risk to the normal user," did not preempt state tort claims challenging labeling).[16]

In any event, "a motion to dismiss is not the proper vehicle to delve into the import of EPA classifications or what EPA representatives have said in the past, what information they

---

section 343(r) . . . ." 21 U.S.C. § 343-1(a)(5) (emphasis added).  Moreover, minimal overbreadth can be remedied by proper jury instructions rather than dismissal of Plaintiff's claim. *See Astiana*, 783 F.3d at 757–58.

[14] Furthermore, such statements are not accurate as the EPA included a specific disclaimer regarding its Group E classification of glyphosate. *See* Am. Compl. ¶ 28; footnote 7, above.

[15]   And even if such EPA classifications could carry preemptive force under certain circumstances, determinations as to a component part cannot insulate a whole product from liability. Here, Mendoza alleges that she was harmed by Monsanto's Roundup®, rather than by glyphosate alone.  (Am. Compl. ¶¶ 67–70, 71–73.)

[16] The majority in *Bates* recognized that FIFRA contemplates that labels will evolve as new and relevant information surfaces. "*Private remedies that enforce federal misbranding requirements would seem to aid, rather than hinder, the functioning of FIFRA*. Unlike the cigarette labeling law at issue in *Cipollone,* which prescribed certain immutable warning statements, *FIFRA contemplates that pesticide labels will evolve over time*, as manufacturers gain more information about their products' performance in diverse settings." *Bates*, 544 U.S. at 451 (emphasis added).

were relying on, and what effect their statements have on the issues before the Court." *Giglio*, 016 WL 1722895, at *3. It is ultimately the duty of the fact finder to determine Roundup®'s safety.

### 6. Plaintiff's Other State-Law Claims for Design Defect, Negligence, and Breach of Express and Implied Warranties Are Not Preempted

"Rules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects," according to the *Bates* Court, "plainly do not qualify as requirements for 'labeling or packaging.'" 544 U.S. at 444. These common law rules do not require that manufacturers label or package their products in any particular way. Therefore, Plaintiff's claims for defective design are not preempted. *Id.*; *see also Turner v. Chevron U.S.A. Inc.*, No. B173622, 2006 WL 1314013 (Cal. Ct. App. May 15, 2006) (unpublished) (design defect claims "do not qualify as requirements for labeling or packaging" (citing *Bates*, 544 U.S. at 441–42)); *Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883, 886–87 (8th Cir. 2005).

Mendoza's express warranty claim is not preempted either. An express warranty cause of action seeks to enforce a contractual commitment that a manufacturer voluntarily undertook by placing a warranty on its product. Because a manufacturer is not required to make an express warranty or to say anything in particular in an express warranty, the common law rule does not even impose a requirement "for labeling or packaging." *Bates*, 544 U.S. at 444–45. The California Court of Appeal held similarly:

> [i]n light of *Bates*, Brazil's allegation that Sara Lee breached an express warranty, even if that warranty appeared on a federally approved label and even if liability for the beach would cause Sara Lee to change its label, was not preempted by FIFRA . . . liability for breach of a state statutory or common law duty does not require any alteration of a label and hence is not subject to FIFRA preemption.

*Brazil v. Sara Lee Corp.*, No. D045925, 2006 WL 181597, at *3 (Cal. Ct. App. Jan. 26, 2006).

Even before *Bates*, the California Court of Appeal ruled in favor of fruit growers who brought breach of warranty and negligence claims against a pesticide manufacturer after suffering a substantial crop loss due to infestation. *Sun Valley Packing v. Consep, Inc.*, 114 Cal. Rptr. 2d 237 (Cal. Ct. App. 2001). There, a manufacturer's representative made guarantees about the efficacy of the product and provided application instructions that differed from the label. The Court held that FIFRA did not preempt the claims because plaintiffs were not directly or indirectly challenging the label, explaining that the oral statements "did not merely repeat information in the label itself" and the voluntary guarantee created a self-imposed duty that fell outside the scope of the label. *Id.* at 243.

For all the foregoing reasons, Monsanto's efforts to apply express preemption fail.

**B.     The Restatement (Second) of Torts §402A Does Not Bar Plaintiff's Design Defect Claims**

Monsanto has not met its high burden to show that Restatement § 402A comments *j* and *k* are applicable.[17] Applicability of comments *j* and *k* cannot be decided at the pleading stage as both comments implicate numerous factual issues. Exemption under comment *k* is limited in California to pharmaceuticals and implanted medical products. Outside of a blanket application to prescription drugs and medical products (discussed below) in California, application of comment *k* requires a risk-benefit calculus that cannot be resolved at the pleading stage. The single out-of-state case that has applied comment *k* to pesticides advocates a case-by-case approach that California precedent specifically rejects, and even there, the court held that application of comment *k* involves a risk-benefit calculus that is for the jury to decide. Finally,

---

[17] For the Court's convenience, comments *j* and *k* are attached here as Appendix A.

applicability of both comments *j* and *k* depends on the extent of the manufacturer's knowledge, further rendering these issues inappropriate for resolution on a motion to dismiss.[18]

### 1.   Comment *k* is Inapplicable by its Own Terms

On its face, comment *k* does not support Monsanto's argument.  Comment *k* provides that where a product is "quite incapable of being made safe for their intended and ordinary use . . . [t]he seller . . . is not to be held to strict liability."  Restatement (Second) of Torts § 402A cmt. k (1965).   The application of comment *k* is limited, however, to products that "are properly prepared and marketed, and proper warning is given."   *Id.*   Here, Plaintiff Mendoza clearly alleges that Roundup® was neither properly prepared nor properly marketed and lacked necessary warnings.  On its face, comment *k* does not apply.  *See Hardeman*, at 5.

### 2.   Pesticides Do Not Qualify for Comment *k*'s Blanket Exemption

In California, courts limit comment *k*'s reach to prescription drugs and other medical products available through a physician.   Comment *k* was intended to address the concern that manufacturers of socially useful and life-saving pharmaceuticals could be subject to liability that would impede the development of new and experimental drugs.  *See Brown v. Super. Ct.*, 751 P.2d 470, 475–76 (Cal. 1988).  These products have inherent risks that cannot be designed away, yet they have other, life-saving benefits.  *See Giglio*, 2016 WL 1722895, at *4.

In *Brown*, the California Supreme Court rejected both the "consumer expectations" and the "risk-benefit" tests for strict liability in prescription drug cases, holding instead that "the producer of a properly manufactured prescription drug may be held liable for injuries caused by the product only if it was not accompanied by a warning of dangers that the manufacturer knew or

---

[18] Comment *k* is an affirmative defense, which cannot be determined at the pleading stage unless it is established on the face of the complaint.  *See Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2487 (2013).

should have known about." *Id.* at 475, 477. *Brown* also rejected a case-by-case approach[19] for prescription drugs and provided a blanket exemption for pharmaceuticals. *See id.* at 481–83. Comment *k* essentially provides a negligence-based standard for evaluating which products are unreasonably dangerous and which are not. Comment *k* thus recognizes a subset of products where the risks inherent in their use are justified ***due to their utility***. Roundup® is not such a product and does not qualify for comment *k*'s protection.

California courts have subsequently extended *Brown*'s logic to other medical products and devices, reasoning that, like pharmaceuticals, these products are implanted into the body or ingested,[20] have the potential to save lives and alleviate pain and suffering,[21] and/or are available only through a physician.[22] But Monsanto does not cite a single California case that has applied comment *k* outside the medical context. The two recent California cases to have considered the issue have ruled that comment *k* does not apply to a plaintiff's design defect claims concerning Roundup® or any product outside of the medical context. *See Hardeman*, at 5 ("California courts appear willing to apply comment k only where a product is 'available only through the services of a physician.'"); *see also Giglio,* 2016 WL 1722895, at *4 ("California courts have applied

---

[19] In the California Supreme Court's view, product-by-product analysis of prescription drugs would harm the public interest in the development and marketing of new drugs as the manufacturer would have no assurance that its product would be measured by the comment *k* standard. *See id.* at 481.

[20] *See Artiglio v. Super. Ct.*, 27 Cal. Rptr. 2d 589, 592 (Cal. Ct. App. 1994) ("Just as drugs are injected or ingested into the body, a breast implant, as a penile prosthesis, is 'plugged in' to the individual. The implant, in each case, poses the potential of harm and the possibility of required removal."); *Plenger v. Alza Corp.,* 13 Cal. Rptr. 2d 811, 818 (Cal. Ct. App. 1992).

[21] *See, e.g.*, *Hufft v. Horowitz*, 5 Cal. Rptr. 2d 377, 383 (Cal. Ct. App. 1992), *modified* Mar. 17, 1992 ("Some devices are so important that . . . the patient faces death without them."). *Hufft* also rejected the sort of product-by-products analysis that Monsanto advocates for comment k application. *See id.* at 384.

[22] *See Artiglio.,* 27 Cal. Rptr. 2d at 594 ("[B]reast implants are physician-directed and physician-applied.").

1    comment k to prescription drugs and medical devices only.").

2          The factors and analysis underlying the thread of medical cases applying comment *k* do

3    not support extending the exemption to glyphosate or Roundup®.[23]   Nor does Monsanto

4    convincingly argue that *Brown*'s analysis should be extended to pesticides.   Monsanto

5    appropriates *Brown*'s language on the societal value of prescription medication (Mot. at 13), but

6    the rationale is unpersuasive here.   Although Monsanto argues that further testing would add to

7    the regulatory delay for the release of "vital herbicide products," (*id.*), it does not explain how a

8    delay for additional testing would negatively impact public welfare.   Unlike prescription drugs,

9    the availability of an herbicide is never a matter of life or death.   The rationale for extending

10   comment *k* protection to medical products is based, in large part, on the presence of medical

11   professionals and intermediaries who can negotiate the risks and benefits involved in prescription

12   drugs and implanted medical devices.   *See Transue v. Aesthetech Corp.*, 341 F.3d 911, 916 (9th

13   Cir. 2003) (quoting *Ruiz-Guzman*, 7 P.3d at 802–03).   No such intermediary exists between

14   manufacturers of pesticides and their ultimate users and consumers.[24]   Policy considerations

15   underlying *Brown* do not support extending comment *k* protection to pesticides generally or to

16   Roundup® specifically.

17

18          [23] Roundup® is more appropriately characterized under *Brown* as a "product [that] is used
     to make work easier" (and therefore outside of comment *k*'s protection) rather than a product that
19   is "necessary to alleviate pain and suffering or to sustain life."  *Brown*, 751 P.2d at 478.  In no
     manner does the instant Complaint allege, or even suggest, that Roundup® is a life-sustaining
20   product.   On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Plaintiff's allegations are
     accepted as true.

21          [24] Notably, comment *k* was intended to protect the development of new and
     experimental—and therefore risky—but potentially life-saving pharmaceuticals.  But Roundup®
22   is neither new nor experimental.   Glyphosate and Roundup® have now been on the shelves for
     forty years, during which time Monsanto could have tested, studied, and reformulated its product
23   to make it safer.  Extending comment *k* protection to Roundup® would lead to the absurd result of
     nearly any utilitarian consumer good qualifying for comment *k* protection.
24

1

3.   <u>Comment *k* Does Not Apply at the Pleading Stage</u>

2

As a class-based exemption for pesticides has no support in the law, Monsanto relies on

3

*Ruiz-Guzman v. Amvac Chem. Corp.*, 7 P.3d 795 (Wash. 2000) (en banc), to argue that comment

4

*k* may be applied to pesticides on a case-by-case basis.  Beyond the fact that *Brown* flatly rejected

5

such a case-by-case analysis, *Ruiz-Guzman* also ***expressly rejects*** a class-based exemption for

6

pesticides under comment *k* and further holds that the issue of whether comment *k* is applicable to

7

a pesticide ***cannot be resolved at the motion to dismiss stage***.[25]

8

Under *Ruiz-Guzman*, a product qualifies for comment *k* protection only if its utility

9

outweighs its risk, and a risk-utility determination is the jury's function.  *See id.* at 804. ("[T]he

10

trier of fact should determine a pesticide's value to society relative to the harm it causes."); *see*

11

*also Ruiz-Guzman v. Amvac Chem. Corp*., 243 F.3d 549 (9th Cir. 2000) (unpublished) (reversing

12

summary judgment for defendants on design defect claim based on risk-utility; "[i]t is the

13

function of the jury to weigh the risks and utility of the pesticide").[26]

14

_____

15

[25] Monsanto relies on several cases in other jurisdictions that have applied comment *k* to products outside of the medical context (Mot. Dismiss at 11–12), but those decisions were all rendered after a fuller factual record than available here and none of them persuasively state why

16

comment *k* should be applicable to a pesticide at all, much less at the pleading stage.  *Hall v. Ashland Oil Co.*, 625 F. Supp. 1515 (1986) contained no substantive discussion of comment *k*,

17

and there, the court noted that "the medical context contains significant safeguards to the ultimate user that are not present in the industrial workplace." *Id*. at 1519.  *Purvis v. PPG Indus., Inc*., 502

18

So. 2d 714, 719 (Ala. 1987), was a summary judgment decision in which the defendant conceded evidence of its knowledge that the product is "likely to be dangerous for the use for which it is

19

intended" under Restatement § 388.  *See also Borel v. Fibreboard Paper Prods. Corp.*, 493 F. 2d 1076 (5th Cir. 1973) (appeal from a trial verdict for plaintiff); *Payne v. Soft Sheen Prods., Inc*.,

20

486 A.2d 712 (D.C. 1985) (overturning directed verdict based on the presence of jury questions); *Daniels v. Combustion Eng'g, Inc*., 583 S.W.2d 768 (Tenn. Ct. App. 1978) (appeal from jury

21

verdict for defendant); *cf. Authement v. Ingram Barge Co*., 977 F. Supp. 2d 606 (E.D. La. 2013) (determination of whether danger from benzene exposure was sufficiently obvious to relieve

22

defendant of duty to warn is "fact-intensive and must be resolved at trial").

23

[26] *See also Giglio*, 2016 WL 1722895, at *4 ("To the extent that comment k could be applied to pesticides, the determination of whether the application of comment k is warranted

24

would be based on the particular product in question.").

Finally, liability under comment *k*, like comment *j* (see below), is predicated on the defendant's knowledge.  Although Plaintiff alleges that Monsanto knew or should have known that its product could cause serious illnesses, Monsanto has not shown that the dangers associated with glyphosate, namely its carcinogenic effects, were not known or knowable at the time.  (Am. Compl. ¶¶ 90, 91(f), 107, 109–10, 114–15, 127–30, 132, 143.).  This factual question cannot be resolved before the parties have had a full opportunity for discovery.  Further, when the New York Attorney General sued Monsanto in 2006 for falsely advertising Roundup® as safe, Monsanto did not defend the action; instead, it entered into a consent order to change its advertising in New York.  (*Id.* ¶¶ 38–39).[27]

Monsanto cannot demonstrate that comment *k* bars Plaintiff Mendoza's design defect claims as a matter of law.  *See Giglio,* 2016 WL 1722895, at *4 ("it would be improper to apply comment k on a motion to dismiss").

### 4.  Comment *j* Does Not Preclude Plaintiff's Claims

Comment *j*, by its own terms, does not support Monsanto's argument.  The *Hardeman* court, in its lucid decision, flatly denied the application of comment *j* to design defect claims concerning Roundup®.  *Hardeman*, at 4–5.

Comment *j* provides, in relevant part, that "[i]n order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning."  Rest. (Second) of Torts § 402A cmt. j.  As the *Hardeman* court held, this language plainly states that "a plaintiff can bring failure-to-warn claims, but it doesn't mean that a plaintiff can bring only failure-to-warn claims."  *Hardeman*, at 5.  Comment *j* further provides that "a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it

_____

[27]  *See Payne*, 486 A.2d at 723 ("[E]ven a relatively clear warning should not be determined as a matter of law but is a question of fact for the jury.").

unreasonably dangerous."  Rest. (Second) of Torts § 402A cmt. j.  Comment *j* thus precludes design defect claims only where the manufacturer provides sufficient warnings.  Plaintiff alleges that Monsanto's warnings, labels, or public statements and marketing materials were patently inadequate to warn of glyphosate/Roundup®'s risks.  Thus, because Plaintiff alleges that Roundup®'s warnings were not adequate, Mendoza is "free to allege that Roundup was also 'in defective condition' or 'unreasonably dangerous.'"  *Hardeman*, at 5.  These allegations must be accepted as true at the pleading stage.  And the adequacy of Monsanto's warnings is ultimately a question for the jury.[28]

Second, like comment *k*, comment *j* implicates the extent of Monsanto's knowledge, which cannot be determined prior to full discovery.  *See* Restatement (Second) of Torts § 402A, cmt. j (a seller must give warnings when it "***has knowledge, or in the application of reasonable, developed human skill and foresight should have knowledge***, of the presence of the ingredient and the danger") (emphasis added).  *See also Vermeulen v. Super. Ct*., 251 Cal. Rptr. 805, 813 (Cal. Ct. App. 1988).  Again, the Complaint alleges that Monsanto knew or should have known about Roundup®'s dangers.  (Am. Comp. ¶¶ 91(f), 106, 108-09, 113-14, 126-27, 129, 131(j), 132, 142).[29]  Plaintiff further alleges that she, and the public generally, did not know until July 2015, at the earliest, that Roundup® is dangerous to human health.  (Am. Comp. ¶¶ 70, 73).  Restatement comments *j* and *k* do not bar Mendoza's non-warning claims.

---

[28] *Gauthier v. AMF, Inc*., 788 F.2d 634, 636 (9th Cir. 1986), on which Monsanto relies, confirms that the adequacy of a warning is a jury question.  *Skaggs v. Clairol Inc*., 85 Cal. Rptr. 584 (Cal. Ct. App. 1970) was rendered after a full trial and concerned proper jury instructions.

[29] In *Oakes v. E.I. Du Pont de Nemours & Co*., 77 Cal. Rptr. 709 (Cal. Ct. App. 1969), the plaintiff alleged an "allergic" reaction to defendant's pesticide but failed to allege defendant's knowledge, a condition of liability under comment *j*. *Oakes* merely confirms that liability depends on the manufacturer's knowledge.  Here, Plaintiff alleges that Monsanto knew or should have known of Roundup®'s dangers, a factual issue that cannot be resolved prior to discovery. *Johnson v. Am. Stand., Inc*., 179 P.3d 905, 908 (Cal. 2008), addresses the sophisticated user doctrine in California.

1

## IV.    CONCLUSION

2    For the foregoing reasons, Plaintiff respectfully requests that the Court deny Monsanto's

3    Motion to Dismiss.

4
Dated: May 3, 2016                              Respectfully submitted,

5                                               **WEITZ & LUXENBERG, P.C.**

6                                               */s/ Christopher B. Dalbey*
7                                               Christopher B. Dalbey (SBN 285562)
                                                        cdalbey@weitzlux.com
8                                               1880 Century Park East, Suite 700
                                                Los Angeles, CA 90067
9                                               Tel: (310) 247-0921
                                                Fax: (310) 786-9927

10                                              Robin L. Greenwald (appearing *pro hac vice*)
                                                        rgreenwald@weitzlux.com
11                                              Maja Lukic (appearing *pro hac vice*)
                                                        mlukic@weitzlux.com
12                                              700 Broadway
                                                New York, NY 10003
13                                              Tel: (212) 558-5500
                                                Fax: (212) 344-5461
14

15                                              **LUNDY, LUNDY, SOILEAU
                                                & SOUTH, LLP**
16                                              Hunter W. Lundy (appearing *pro hac vice*)
                                                        hlundy@lundylawllp.com
17                                              Matthew E. Lundy (appearing *pro hac vice*)
                                                        mlundy@lundylawllp.com
18                                              Kristie M. Hightower (appearing *pro hac vice*)
                                                        khightower@lundylawllp.com
19
                                                501 Broad Street
20                                              Post Office Box 3010
                                                Lake Charles, LA 70602
21                                              Tel.: (337) 439-0707
                                                Fax: (337) 439-1029
22
                                                *Attorneys for Plaintiff*
23

24

---

**<u>Appendix A</u>**

**<u>Restatement (Second) of Torts § 402A (1965)</u>**

*j. Directions or warning*. In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger. Likewise in the case of poisonous drugs, or those unduly dangerous for other reasons, warning as to use may be required.

But a seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is generally known and recognized. Again the dangers of alcoholic beverages are an example, as are also those of foods containing such substances as saturated fats, which may over a period of time have a deleterious effect upon the human heart.

Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

***k. Unavoidably unsafe products.*** There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.