UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA MENDOZA,<br><br>              Plaintiff,<br><br>     v.<br><br>MONSANTO COMPANY,<br><br>              Defendant. | Case No.  1:16-cv-00406-KES-HBK<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE EXPERT DESIGNATIONS<br><br>(Doc. No.  158)[1]l |

Pending before the Court is Plaintiff Yolanda Mendoza's Motion to Strike Defendant Monsanto Co.'s Expert Designation of Donna Farmer and David Saltmiras, filed August 27, 2024. (Doc. No. 158, "Motion"). On September 10, 2024, Defendant filed an Opposition (Doc. No. 160) and on September 20, 2024, Plaintiff filed a Reply (Doc. No. 162). For reasons set forth below, the Court will grant the Motion.

**BACKGROUND AND PARTIES POSITIONS**

On October 2, 2023, Defendant Monsanto Co. submitted to Plaintiff its Rule 26 Designation and Disclosure of Expert Testimony, which listed 15 retained experts, three non-retained experts, and three employees whose testimony may include expert testimony. (*See* Doc.

---

[1] Because a Motion to Strike Expert Designations is not among the motions that a Magistrate Judge cannot decide by direct order under 28 U.S.C. § 636(b)(1)(A), the Court need not submit findings and recommendations to the District Court.

No. 158-3). This latter group included Donna Farmer, Ph.D., and David Saltmiras, Ph.D., both employees of Bayer Crop Science, a division of Monsanto's parent company Bayer AG.[2] (*Id*. at 19-22).

For each of these two witnesses, the Rule 26 disclosures provide a brief professional background on the witness and a general description of the topics on which the witness may testify. (*See id*.). Each witness disclosure statement also states, "The substance of [the witness'] opinions is included in, and consistent with, [his/her] prior testimony in the Roundup litigation, which is incorporated herein by reference." (*Id*. at 20, 23).

Plaintiff promptly advised Defendant that it considered these disclosures deficient under either Rule 26(a)(2)(B) or 26(a)(2)(C). (Doc. No. 158-1 at 7). After the parties were unable to resolve the matter, they sought the Court's intervention, which held an informal discovery dispute hearing on October 31, 2023. (Doc. No. 150). At the hearing, the Court advised the parties of its preliminary position that Defendant's disclosures as to Farmer and Saltmiras were deficient. In communications with Plaintiff after the hearing, Monsanto maintained its position that the disclosures were sufficient because the witness' testimony fell within their personal knowledge. (Doc. No. 158-1 at 8). After the parties were unable to resolve the impasse, Plaintiff filed the instant Motion under Rule 37, asking the Court to strike the expert designations of witnesses Farmer and Saltmiras. (Doc. No. 158).

Plaintiff's position is that Farmer and Saltmiras were each required to submit either a written report under Rule 26(a)(2)(B), or else the more limited disclosures required by Rule 26(a)(2)(C), namely:

    (i) The subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

    (ii) A summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C).

It is undisputed that Farmer and Saltmiras did not submit written expert reports, thus the

---

[2] *See* https://www.cropscience.bayer.us/about-us (last visited: October 22, 2024).

disclosures do not satisfy Rule 26(a)(2)(B).  And Plaintiff contends that Defendant has provided neither category of information required by Rule 26(a)(2)(C) as to Farmer and Saltmiras.  They argue that "Monsanto's disclosures for both purported employee-experts consisted of an identical list of vague, overly broad topics about which Farmer and Saltmiras may testify" and that the disclosures provide no summary of the facts and opinions to which the witnesses will testify, merely incorporating by reference the witness' prior testimony, which is inadequate.  (Doc. No. 158-1 at 7).  Plaintiff contends the failure to provide adequate disclosures was neither "substantially justified or harmless" because the non-compliance was entirely within Defendant's control, and because the non-compliance has prejudiced Plaintiff's preparations for trial including its own decisions regarding which experts to retain.  (*Id*. at 18-19).  Nor should the Court consider lesser sanctions than striking the expert designations here because excluding Farmer and Saltmiras' expert testimony is not case dispositive.  (*Id*. at 19).

        Defendant responds that Plaintiff's Motion should be denied because Plaintiff has not suffered any prejudice by Defendant's limited disclosures as to Farmer and Saltmiras.  (Doc. No. 160 at 3).  Defendant points to the fact that Farmer and Saltmiras "are well-known individuals in the Roundup litigation" and that Plaintiff's lead counsel, Robin Greenwald "is intimately aware of Dr. Farmer and Dr. Saltmiras and the opinions they have provided regarding their work for Monsanto and their personal knowledge of Roundup's safety profile." (*Id*.).  Thus, even if the Court finds the disclosures inadequate under Rule 26, Defendant argues any deficiency is harmless given Ms. Greenwald's familiarity with these two witnesses and their testimony. (*Id*. at 3-4).  Relatedly, Defendant contends that Plaintiff has not been prejudiced in making strategic decisions about rebuttal experts because Farmer and Saltmiras' testimony covers the same general subject matter as Monsanto's other experts, therefore presumably Plaintiff's existing rebuttal witnesses will be competent to rebut Farmer and Saltmiras.  (*Id*. at 4).

        Moreover, Defendant contends that Farmer and Saltmiras' testimony is not properly designated as expert testimony at all.  Their testimony "will be based on their personal knowledge acquired during their employment and study" and Defendant only disclosed them among its experts "out of an abundance of caution."  (*Id*. at 5).  Monsanto's position is that these two

witnesses will effectively testify as fact witnesses and are thus exempt from the disclosure requirements of either Rule 26(a)(2)(B) or 26(a)(2)(C). (*Id*.). In fact, even if the Court were to grant Plaintiff's Motion, Defendant believes "it would have no effect on their testimony at trial." (*Id*. at 4).

## DISCUSSION

A. <u>Legal Standard</u>

Federal Rule of Civil Procedure 26 requires parties to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). "Generally, the disclosure regarding expert testimony is intended to allow the opposing party to have a reasonable opportunity to prepare for effective crossexamination and arrange for expert testimony from other witnesses." *Flonnes v. Prop. & Cas. Ins. Co. of Hartford*, 2013 WL 2285224, at *2 (D. Nev. May 22, 2013) (citing Adv. Comm. Notes to 1993 Amendments). The Federal Rules contemplate two different classes of experts: those retained or specially employed to give expert testimony in a case, and witnesses who are not retained or specially employed but, nevertheless, may provide expert testimony. *See Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296, 298 (D.Nev.1998) (citing *Piper v. Harnischfeger Corp.*, 170 F.R.D. 173, 174 (D.Nev.1997)). For experts "retained or specifically employed to provide expert testimony" the disclosure requirements are as follows:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed R. Civ. P. 26(a)(2)(B).

Federal Rule of Civil Procedure 26(a)(2)(C) requires expert disclosures for non-retained experts, such as treating physicians, to state: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Rule 26(a)(2)(C) requires "considerably less" than the written reports required for retained experts under Rule 26(a)(2)(B), but "the disclosure must contain sufficient information to allow opposing counsel to make an informed decision on which, if any, of the treating providers should be deposed, determine whether to retain experts, and conduct a meaningful deposition or cross examination of the witness at trial." *Christensen v. Goodman Distribution, Inc.*, 2021 WL 71799, at *2 (E.D. Cal. Jan. 8, 2021) (citing *Morgan v. Best Buy Co.*, 2018 WL 2245059, at *2 (D. Nev. Feb. 15, 2018). "An opposing party should be able (and [is] entitled) to read an expert disclosure, determine what, if any, adverse opinions are being proffered and make an informed decision as to whether it is necessary to take a deposition and whether a responding expert is needed." *Krause v. Hawaiian Airlines, Inc.*, 2019 WL 2598770, at *5 (E.D. Cal. June 25, 2019).

"A party's failure to comply with the rules regarding expert witnesses exposes that party to sanctions under Federal Rule of Civil Procedure 37(c)." *Gorrell v. Sneath*, 2013 WL 4517902, at *2 (E.D. Cal. Aug. 26, 2013). If a party fails to provide information required by Rule 26(a), then "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." *Christensen*, 2021 Wl 71799 at *2 (citing Fed. R. Civ. P. 37(c)(1). The Ninth Circuit gives "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)," which "gives teeth to the Rule 26(a) disclosure requirements." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c)(1) is a "recognized broadening of the sanctioning power," *id.*, which the Federal Rules Advisory Committee described as a "self-executing," "automatic" sanction to "provide[ ] a strong inducement for disclosure of material . . ." *Christensen*, 2021 WL 71799 at *2 (citation omitted).

B.  <u>Defendant's Disclosures As to Witnesses Farmer and Saltmiras are Inadequate</u>

Here, Defendant listed witnesses Farmer and Saltmiras in their Rule 26 disclosures as "employees whose testimony may contain expert opinion." (Doc. No. 158-3 at 18-23). Defendant noted that "by virtue of their training, education, and experience [these witnesses] may offer a combination of fact and opinion testimony as to technical, medical, and scientific issues related to their responsibilities at Monsanto . . ." (*Id*. at 18). In their Joint Pretrial Statement, Monsanto designated both Farmer and Saltmiras as "expert" witnesses. (Doc. No. 171 at 56:8-9). At the October 22, 2024 teleconference with the undersigned, counsel for Monsanto confirmed that they intended to move to have both Farmer and Saltmiras qualified as witnesses at trial.  Thus, the Court finds that Farmer and Saltmiras are in fact offered as expert witnesses, albeit hybrid fact and opinion witnesses subject to the less onerous disclosure requirements of Rule 26(a)(2)(C).

Defendant's disclosure as to Donna Farmer, Ph.D.,[3] is reproduced in its entirety below:

> Dr. Farmer is a Senior Science Fellow and Senior Toxicologist at Bayer Crop Science. Dr. Farmer began working for Monsanto in 1991. She has over 20 years of experience working with glyphosate as a toxicologist, including in the Product Stewardship group. She received her Ph.D. in anatomy and cell biology in 1982 from the University of Cincinnati College of Medicine, with a research focus on mechanistic reproductive and developmental toxicology.
>
> Dr. Farmer may provide facts and testimony based on (1) the knowledge and experience she has gained while working at Monsanto and in reviewing documents during the course of her employment, and (2) her education, training, and background. Dr. Farmer may offer testimony regarding her own view, that glyphosate and all Roundup® formulated products are safe and do not cause cancer. Dr. Farmer also may provide testimony regarding the literature and history, properties, and toxicology of Roundup® formulated products and their components or constituents, including, but not limited to, glyphosate and surfactants; review and regulation of glyphosate, surfactants and glyphosate-based products by U.S. and foreign regulators and their conclusions; Monsanto's research, development, and testing efforts regarding glyphosate, surfactants, and Roundup® formulated products including, but not limited to human safety testing, dermal absorption testing, mechanistic testing, acute toxicity testing, sub-chronic toxicity testing, and carcinogenicity testing and evaluation; and scientific studies of

---

[3] Other than the professional background section, the disclosure for Dr. Saltmiras is essentially identical to Dr. Farmer's.

> glyphosate and/or glyphosate-based formulated products and surfactants, including reports and literature, Monsanto's response [to] such reports and literature, and their relevance to the question of whether glyphosate and/or glyphosate-based formulated products and surfactants cause cancer, including NHL. The substance of Dr. Farmer's opinions is included in, and consistent with, her prior testimony in the Roundup® litigation, which is incorporated herein by reference.

(Doc. No. 158-3 at 19-20). The Court finds, as discussed further below, that the above disclosures lacks the detail and specificity routinely required under Rule 26(a)(2)(C).

Even assuming that the disclosures provide sufficient detail regarding the "subject matter on which [each] witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705," it is apparent to the Court that the disclosures provide no meaningful information concerning the "facts and opinions to which the witness is expected to testify." See Fed. R. Civ. P. 26(a)(2)(C)(ii). The statement in the disclosure that Dr. Farmer "may offer testimony regarding her own view that glyphosate and all Roundup® formulated products are safe and do not cause cancer" is too general to put Plaintiff on notice of the testimony Farmer intends to offer at trial *See Alfaro v. D. Las Vegas, Inc*., 2017 WL 3172539, at *3 (D. Nev. July 26, 2017) (upholding magistrate judge's decision to apply preclusion sanctions under Rule 37(c) where party's non-retained expert disclosures under Rule 26(a)(2)(C) contained only "boilerplate statements that do not reveal any information, let alone a summary of what opinions the witnesses will offer or what facts support these opinions"); *Apex Abrasives, Inc. v. WGI Heavy Mins., Inc*., 2019 WL 1403111, at *2 (D. Mont. Mar. 28, 2019) (excluding expert testimony at trial because the disclosure "advises the reader that the witness will have opinions in certain areas, but fails to state what the opinions are, and the factual basis for those opinions").

As several courts have found, merely referring to a witness' prior deposition, trial testimony, or other records is insufficient to satisfy the disclosure requirement of Rule 26(a)(2)(C). *See, e.g., Jones v. Colorado Casualty Ins. Co.,* 2015 WL 6123125, at *4 (D. Ariz. Oct. 19, 2015) ("[T]he Court cannot conclude that Plaintiff's failure to properly follow the requirements of Rule 26(a)(2)(C) was harmless because Plaintiff believes that [Defendant] could have correctly guessed at the substance of [the expert's] testimony from his prior deposition

7

testimony, medical records, and prior disclosures."); *Hayes v. Am. Credit Acceptance , LLC*, 2014 WL 3927277, at *3 (D. Kan. Aug. 12, 2014) (non-retained expert disclosures under Rule 26(a)(2)(C) "must summarize actual and specific opinions" and "[i]t is not enough to state that the witness will testify consistent with . . . the testimony given during his or her deposition"); *Flonnes v. Prop. & Cas. Ins. Co. of Hartford*, 2013 WL 2285224, at *5 (D. Nev. May 22, 2013) (collecting cases) (finding disclosures inadequate under Rule 26(a)(2)(C) where they merely refer to medical records for the facts forming the basis of non-retained expert's opinion but provide no separate summary of facts and opinions).

In *Copart, Inc. v. Sparta Consulting, Inc.*, 2017 WL 85824 (E.D. Cal. Jan. 9, 2017), the court denied a motion to exclude expert witnesses based on deficient Rule 26(a)(2)(C) disclosures. The court found that those disclosures *were* sufficient because they include "the identity of the three employee-experts, a brief summary of each witness's background with the company, the subjects about which each witness would testify, and the basis for each witness's testimony." *Copart, Inc.*, 2017 WL 85824, at *3. For illustrative purposes, the Court reproduces the disclosures for one of those employee-expert witnesses below:

> I. PHATELA MOSOTHOANE
>
> 1. Phatela Mosothoane is a Copart employee who will testify about the work of defendants Sparta Consulting ("Sparta"), KPIT Infosystems, Inc. and KPIT Technologies, Ltd. On the AIMOS Project (the "Project"), and about Copart's investigation into defendants' misappropriation of Copart's imaging technology. Copart is disclosing Mr. Mosothoane under Rule 26(a)(2)(C).
>
> 2. Mr. Mosothoane is presently Vice President of Enterprise Systems at Copart. He has been with Copart since May 2013. Before joining Copart, Mr. Mosothoane worked on SAP software implementation for Accenture from 2005 to 2013, where he eventually served as a manager in the SAP group.
>
> 3. With respect to defendants' work on the Project, Mr. Mosothoane will provide opinions regarding the following subjects:
>
>> a. Sparta and the other defendants did not appear to follow an appropriate and recognizable project methodology, likely resulting in the disorganization, delays and deficient work on the Project that Mr. Mosothoane observed;
>>
>> b. Sparta and the other defendants failed to generate, maintain and update critical documentation for its AIMOS solution,

8

including with respect to the following areas: requirements, designs, development, unit and integration testing, for the benefit of collaboration (cross teams (CRM/SD/BW) both on and offshore), transition/continuity (resource attrition), training (basis for training), and change evaluation. These documentation failures likely resulted in wasted work, delays, defective design and build and – in combination with the failure of the solution to pass UAT testing and provide the required business functionality – ultimately rendered the solution unusable to Copart;

c. Sparta and the other defendants failed to appropriately and adequately investigate Copart's business requirements;

d. Sparta and the other defendants' consultants often lacked the appropriate and suitable skill, expertise, experience and/or motivation to provide designs that addressed key functional gaps in the AIMOS solution;

e. Sparta and the other defendants' decision to include ECC and CRM in Sparta's AIMOS solution resulted in ongoing system failures, including information failing to replicate between ECC and CRM. These defects demonstrated a failure by Sparta and the other defendants to understand the Copart process and properly evaluate their ECC-CRM design and to properly realize that design;

f. Sparta and the other defendants failed to raise and identify design and other risks and problems to Copart in an appropriate, diligent, full or timely manner, and failed to manage and mitigate those risks and problems; and

g. Sparta and the other defendants failed to disclose to, and be transparent with, Copart concerning design and implementation decisions they made that had potentially catastrophic implications for the AIMOS Project.

4. With respect to defendants' misappropriation, Mr. Mosothoane will provide opinions regarding the following subjects:

a. Mr. Mosothoane and his team spent approximately 80 hours reviewing the misappropriation of the imaging technology, including time setting up and examining the AutoEdge "sandbox" produced by Sparta.

b. Mr. Mosothoane's analysis of what was contained in the AutoEdge "sandbox," based on his review.

5. Mr. Mosothoane's opinions will be based on his expertise and training in SAP, his experience in SAP implementations, his direct involvement in the AIMOS Project, his communications with Sparta personnel and review of Sparta's work product, his direct involvement in Copart's assessment of Sparta's work after the termination of Sparta and his examination of the AutoEdge "sandbox" produced by Sparta.

(Doc. No. 169 in E.D. Cal. Case No. 2:14-cv-00046-KJM-CKD). Here, by contrast, Defendant provides no detail as to the substance of the two witness' opinions or the facts on which they are based, but rather states only that they are "included in, and consistent with" their prior testimony in the Roundup litigation. (Doc. No. 158-3 at 19-21). Defendant asserts that Plaintiff has suffered no prejudice from these deficient disclosures because Plaintiff's lead counsel has prior familiarity with Farmer and Saltmiras' testimony, but the Court finds this speculative reasoning—which relies on Defendant's subjective belief as to opposing counsel's knowledge—unpersuasive and contrary to the principles of fairness and transparency underlying Rule 26.

### C. Exclusion of Farmer and Saltmiras' Expert Testimony is an Appropriate Sanction

Rule 37(c)(1) "is an 'automatic' sanction that prohibits the use of improperly disclosed evidence." *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (citing *Yeti by Molly Ltd.*, 259 F.3d at 1106). "Litigants can escape the 'harshness' of exclusion only if they prove that the discovery violations were substantially justified or harmless." *Merchant*, 993 F.3d at 740. "District courts have identified '[s]everal factors to guide the determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence.'" *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (quoting *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017). Additionally, "if a Rule 37(c) sanction will "deal[ ] a fatal blow" to a party's claim, a district court must consider (1) "whether the claimed noncompliance involved willfulness, fault, or bad faith" and (2) "the availability of lesser sanctions." *Merchant*, 993 F.3d at 740-41 (*citing R & R Sails, Inc. v. Insurance Co. of Pennsylvania*, 673 F.3d 1240, 1246–48 (9th Cir. 2012).

Plaintiff argues that Defendant's failure to disclose was neither substantially justified nor harmless. Because Defendant was repeatedly non-complaint in its expert disclosures, Monsanto's failure to disclose reflected willfulness, which cannot be "substantially justified." (Doc. No. 158-1 at 18) (citing *Merchant*, 993 F.3d at 742 n.2 (affirming exclusion where "[t]he excuses Merchant's counsel gave for the disclosure failures were within his control [] and the district

court found that they were easily avoidable, which is supported by the record.") (internal citation omitted) and *Stolz v. Travelers Com. Ins. Co.*, 2022 WL 411416, at *4 (E.D. Cal. Feb. 10, 2022) ("Even if Stolz had shown that excluding his experts' opinions would dispose of a claim, the result would be the same because he is at fault for the nondisclosure. Nothing in the record suggests the circumstances that led to his noncompliance were outside his own and his attorneys' control. Rather, the contrary is true."). Indeed, Defendant does not dispute here that his failure to comply with Rule 26 was entirely within his control; Monsanto repeatedly refused to amend its disclosures despite both Plaintiff and the Court advising that they were deficient, thus it cannot argue that its failure to do so was substantially justified.

Defendant argues that Plaintiff will not suffer "surprise or prejudice" because Plaintiff's lead counsel can simply infer the substance of the witness' opinions from her prior work on the Roundup litigation. (Doc. No. 160 at 4). This proposition finds some support in *Liberty Insurance Corp.*, cited by Defendant, where an insurance company claimed prejudice from the failure to disclose under Rule 26 the extent of testimony by the only percipient witness to an ATV accident. 41 F.4th at 1192. The Court found the insurance company's position untenable, stating, "[a]s the owner of the cabin and ATV [covered by plaintiff's policy], as well as the only witness called to testify at trial, it is entirely *unsurprising* that Jerry Brodeur would testify on these subjects." *Id.* at 1192 (emphasis in original).

The Court does not find similar reasoning persuasive here. Farmer and Saltmiras are among 21 experts that Monsanto has disclosed for this trial; they may have testified on numerous occasions in the Roundup litigation, but given the sprawling and complex nature of this MDL, the Court does not find it appropriate to impute to Plaintiff's lead counsel information that Defendant could more easily—and indeed is obligated to—affirmatively disclose. Nor does the Court find any basis to consider less severe sanctions, given Defendant's own admission that striking the expert designations of these two witnesses "will not impact their testimony" because it is based entirely on their personal knowledge. (Doc. No. 160 at 4); *see Merchant*, 993 F.3d at 740-41.

Accordingly, it is **ORDERED**:

Plaintiff's Motion to Strike the Expert Designations of Witnesses Donna Farmer, Ph.D,

and David Saltmiras, Ph.D (Doc. No. 158), is **GRANTED**.  Drs. Farmer and Saltmiras may offer testimony as fact witnesses in this action, including at trial, but are hereby prohibited from offering expert testimony.

Dated:     October 22, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE